SEIGAFOLAVA R. PENE and
CARMENCITA PENE, Plaintiffs

v.

AMERICAN SAMOA POWER AUTHORITY and
ABE MALAE, Executive Director, Defendants

High Court of American Samoa
Trial Division

CA No. 67-88

January 5, 1989

9

Before KRUSE, Chief Justice, and TAUANU`U, Chief Associate Judge.

Counsel: Plaintiffs Seigafolava R. Pene and
 Carmencita Pene pro se
 For Defendants, Martin R. Yerick,
 Assistant Attorney General, and Enere
 H. Levi, Assistant Attorney General

Plaintiffs are utility consumers and the defendant power authority (hereafter "ASPA") is a government agency supplying the territory's electrical energy needs. Plaintiffs, appearing pro se, sue ASPA and its chief executive officer, Abe Malae, for what plaintiffs claim was the wrongful termination of their electrical supply by defendants. They pray for injunctive relief, damages for "mental distress" suffered as a result of harm arising in their family and business because of the power cuts, and for punitive damages in the amount of $5 million. Plaintiffs frame their cause of action as a breach by defendants of a certain settlement contract with ASPA This contract allegedly relates to an agreement reached by the parties concerning the payment of a certain outstanding utility account owing by plaintiffs to ASPA Plaintiffs necessarily claim that while they were complying with their obligations under the settlement agreement, defendants "illegally and improperly" disconnected their power supply to plaintiffs' damage.

Plaintiffs' testimony was to the effect that the alleged agreement came about as the result of an out of court settlement by the parties of that civil suit docketed Civil Action No. 45-87, which

was dismissed with prejudice upon the stipulation of the parties thereto. That suit, by plaintiff Seigafolava Pene, also sought a multimillion dollar amount in the way of punitive damages against these same defendants and it is claimed by Seigafolava that his agreement to forbear from suit in that matter was consideration for the settlement agreement now at issue before us. This agreement, according to Seigafolava, came about as the result of a meeting he had attended with defendant Malae, Assistant Attorney General Levi, and Mrs. Betty Ah Soon. This meeting was called on the morning Civil Action No. 45-87 was scheduled to go to trial after Seigafolava moved for and obtained a brief continuance form the Court upon the representation of a settlement possibility. The motion to continue was granted over the objection of Assistant Attorney General Levi, who represented the government.

Although no written agreement resulted as a result of this meeting, save for a stipulation to dismiss with prejudice, plaintiffs here view the meeting as resulting in the following understanding: that in consideration of Seigafolava's withdrawal of his $5 million-plus claim, ASPA and the government would "review and reply" to certain claims filed by plaintiff regarding the government's use of certain communal lands of plaintiff's family in Manu`a; that plaintiff Seigafolava would pay their outstanding account-some two thousand dollars - with ASPA upon hearing from the defendants on these claims; and that the parties would comply with these agreements within 90 days.

Both defendant Malae and Assistant Attorney General Levi denied that there was ever such an understanding as a result of the meeting. Mr. Malae testified that all he was concerned with at the meeting was the payment of the account due ASPA The only conclusion arrived at was that the plaintiff's complaint would be dismissed with prejudice and that ASPA would allow 90 days to plaintiff to pay off his outstanding account.

Attorney Levi's testimony was similar in effect. He was ready for trial in Civil Action No. 45-87 that particular morning and objected to a continuance. The meeting as he had understood it came about because Seigafolava wanted the matter resolved as he appeared concerned with his case and

11

with keeping his electricity connected. Attorney Levi testified that he undertook all negotiations on behalf of his clients and took detailed notes of all the proceedings. These notes he maintained in his files on the matter and brought with him to Court. Seigafolava's offer of settlement was mainly concerned with the objective of acquiring some more time to pay his account. ASPA's objective was the payment of the bill.

According to Attorney Levi's file, the only consensus reached was that Seigafolava would get 90 days to clear his outstanding account of approximately $2,400.00, excluding the bill for the then month of June. Seigafolava had indicated that he would pay this off in one lump sum and he would endeavor to maintain his current billings up to date. In return, Seigafolava would dismiss his lawsuit with prejudice and, according to Levi, he took special pains to explain the meaning of dismissal to Seigafolava. Lastly, counsel Levi testified that his notes reflected the final term of agreement as that the parties would bear their own costs of suit. Attorney Levi then testified that he returned to his office and prepared a stipulation to dismiss with prejudice which was then sent to Seigafolava for signature. This stipulation was presented to the Court that afternoon and Civil Action No. 45-87 was accordingly dismissed.

On our evaluation of the evidence and assessment of the testimony, we find the defendants' version of the settlement agreement to be more consistent with the realities of the circumstances.

The continuance of trial was sought at plaintiff Seigafolava's instance without notice to defendants' counsel and over his objection to further delay trial on the matter. Settlement was accordingly sought by plaintiff there, and in the circumstances the Court is far from being impressed with plaintiffs' settlement version as making any business sense to defendants. On the other hand, defendant Malae's testimony to the effect that it would have been beyond the scope of his authority to commit ASPA to collection deals contingent on collateral matters, is, in our view, the more plausible explanation. While it may have been plaintiffs' every intention to attempt to secure the terms of settlement which they contend before

12

the Court, we find that such intentions were never clearly communicated to, nor addressed by, defendants.

The thrust of plaintiffs' offers of proof to sustain their version of the settlement agreement centered on a number of exhibits which were no more than self-serving documentation and prepared by plaintiff Seigafolava after the fact of negotiation. One of these self-serving claims is the alleged contractual term that ASPA and the government would "review and reply" to certain collateral land claims filed by Seigafolava within 90 days of the meeting. The alleged term is quite meaningless as a practical matter to plaintiffs. If there had been such a term and had ASPA merely replied to plaintiffs' land claims in the negative, such a clause would be of really no contractual value to plaintiffs. The real reason for the insistence by plaintiffs to the existence of such a clause became apparent at trial. It was advanced to explain plaintiffs' nonpayment of their electrical account within the 90 day grace period acceded to by ASPA (Plaintiff Seigafolava felt that if ASPA did not. "review and reply" within 90 days, then somehow plaintiffs were absolved from compliance with the payment clause).

Upon the foregoing it is the conclusion of the Court that judgment be entered in favor of the defendants.

As a preliminary injunction was issued against defendants to maintain the connection of plaintiffs' electrical supply upon plaintiffs' prior posting of bond in the monthly sum of $100.00, such bond funds collected by the Clerk shall be paid over to defendant ASPA to offset the value of electrical power supplied by ASPA to plaintiffs. as a result of the preliminary injunction, and the balance, if any, shall be returned to plaintiffs. All costs of electricity so supplied and in excess of the value of the bonds posted shall be billed by ASPA to plaintiffs, in the normal course.

It is so Ordered.